# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

Blu Homes, Inc.,                          )
                                          )
      Plaintiff,                   )
                                          )
      v.                           )      Civil Action No. 10-11418-DJC
                                          )
Michelle Kaufmann, Michelle Kaufmann      )
Studios, Inc., Michelle Kaufmann Studio,  )
Studio 101 Designs, Inc.,                 )
                                          )
      Defendants.                  )
_____)


## MEMORANDUM AND ORDER

Casper, J.                                                                July 29, 2011

## I.      Introduction

      Plaintiff Blu Homes, Inc. ("Blu Homes") has brought this action against Defendants Michelle Kaufmann ("Kaufmann"), Michelle Kaufmann Studio, Michelle Kaufmann Studios, Inc. and Studio 101 Designs, Inc. alleging various causes of action in connection with Blu Homes' acquisition of certain intellectual property originally created by Kaufmann.  Blu Homes has now settled with Studio 101 Designs, Inc. and that defendant has now been dismissed from this action.  Defendants Kaufmann, Michelle Kaufmann Studio and Michelle Kaufmann Studios, Inc.[1] ("the Kaufmann Defendants") now move to dismiss the first amended complaint for lack of personal jurisdiction and

_____

[1]The Kaufmann Defendants note that there "is no such entity" as Michelle Kaufmann Studios, Inc.  (Def. Memo at 1 n. 1).  Blu Homes appears to acknowledge as much because its proposed Second Amended Complaint removes Michelle Kaufmann Studios, Inc. as a defendant. (D. 27-1).

1

improper venue or, in the alternative, to transfer this case pursuant to 28 U.S.C. § 1404(a). The Kaufmann Defendants have also moved to strike certain paragraphs of a declaration filed in support of Blu Homes' opposition to their motion to dismiss. In addition to the defense motions, Blu Homes' motion for leave to file a second amended complaint is also pending. For the reasons set forth below, the Kaufmann Defendants' motion to dismiss or transfer and motion to strike are DENIED and Blu Homes' motion for leave to file a second amended complaint is GRANTED.

## II.     Standard of Review and Burden of Proof

Although it is the Kaufmann Defendants' motion to dismiss, Blu Homes ultimately bears the burden of establishing that personal jurisdiction over the Kaufmann Defendants exists. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). Here, where the Kaufmann Defendants claim that Blu Homes has failed to satisfy the prima facie standard to support jurisdiction, the Court considers "whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) (quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)). Under this standard, the Court will look to the facts alleged in the pleadings and the parties' supplemental filings, including affidavits. Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law, 142 F.3d at 34. It will "then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Id. Notwithstanding the liberality of this approach, the court will not "credit conclusory allegations or draw farfetched inferences." Ticketmaster, 26 F.3d at 203.

## III.  Factual Background

Blu Homes designs, manufacturers and markets "green" or "ecofriendly" homes for residential, commercial and institutional customers.  (Am. Compl. ¶ 12).[2]  The company is a leader in its industry for its innovative use of computer modeling and unconventional building materials and, in particular, its use of folding steel framing.  (Declaration of Maura McCarthy, Vice President for sales and marketing at Blu Homes ("McCarthy Decl.") ¶ 3).  Kaufmann is a prominent architect and designer of preconfigured prefabricated green homes.  (Am. Compl. ¶ 10).  As the principal of the former design firm, mkElements, Inc. ("mkElements"), Kaufmann assigned the firm's intellectual property assets to third-party Uecker and Associates, Inc. ("Uecker") as an alternative to failing to satisfy mkElements' obligations to its creditors. (Affidavit of Defendant Michelle Kaufmann ("Kaufmann Aff.") at ¶¶ 8-9).

Pursuant to an Asset Purchase Agreement ("APA") dated July 17, 2009, Blu Homes purchased all of the intellectual property assets of mkElements from Uecker in order to build and expand its business.  (Am. Compl. ¶¶ 13-17; McCarthy Decl. ¶¶ 5, 6).  The integration of the new

---

[2]For the purposes of this Memorandum and Order, the parties' filings are abbreviated as follows:  Blu Homes' first amended complaint ("Am. Compl."); Defendants' memorandum in support of their motion to dismiss or transfer ("Def. Memo"); Affidavit of Michelle Kaufmann attached to Defendants' memorandum in support of their motion to dismiss or transfer ("Kaufmann Aff."); Blu Homes' opposition to Defendants' motion to dismiss or transfer ("Pl. Opp."); Declaration of Maura McCarthy attached to Blu Homes' opposition to Defendants' motion to dismiss or transfer ("McCarthy Decl."); Defendants' Reply to Blu Homes' opposition to Defendants' motion to dismiss or transfer ("Def. Reply"); Second Affidavit of Michelle Kaufmann attached to Defendants' Reply ("Second Kaufmann Aff."); Blu Homes' motion for leave to file a second amended complaint ("Pl. Mot. to Amend"); Defendants' opposition to Blu Homes' motion for leave to file a second amended complaint ("Def. Opp. to Mot. to Amend"); Defendants' motion to strike certain paragraphs of the McCarthy declaration ("Def. Mot. to Strike"); Blu Homes' opposition to Defendants' motion to strike ("Pl. Opp. to Mot. To Strike"); and transcript of hearing held on July 20, 2011 ("Tr. 7/20/11").

intellectual property, now exclusively owned by Blu Homes, into the company's business has been largely responsible for more than a fivefold increase in its sales and is a cornerstone of what the company expects will be significant growth in the future. (McCarthy Decl. ¶¶ 2, 9, 24).

In the wake of Blu Homes' purchase of the intellectual property, Blu Homes and Kaufmann entered into negotiations concerning the terms of an agreement under which Kaufmann would assist and oversee the transition of the intellectual property into the company's existing business as well as provide strategy and design consulting services. (Am. Compl. ¶ 19; McCarthy Decl. ¶¶ 10-17). During these discussions, Kaufmann represented to Bill Haney, President of Blu Homes, that she would not rule out designing individualized unique custom homes, but that she did not intend to compete with Blu Homes with a line of preconfigured prefabricated homes. (Am. Compl. ¶ 20). Blu Homes alleges that on July 12, 2009, Kaufmann told Haney that she planned to leave the preconfigured prefabricated home business to pursue other design opportunities instead, with a focus in the non-profit area or resorts. (Am. Compl. ¶ 20). Kaufmann allegedly conveyed the same message to Haney throughout their discussions from July 2009 through October 2009. (Am. Compl. ¶ 20). The parties also stated that they both hoped to develop a productive long-term business relationship. (McCarthy Decl. ¶ 12).

During the course of the parties' negotiations, Kaufmann came to Massachusetts to negotiate her consulting arrangement on July 21-23, 2009. (McCarthy Decl. ¶¶ 14, 15). On July 22, 2009, Kaufmann met with Blu Homes' senior management team on Cape Cod to discuss the terms under which she and Blu Homes could work together. (Am. Compl. ¶¶ 20, 21; McCarthy Decl. ¶¶ 15-17). While discussing their potential working relationship, Kaufmann allegedly falsely informed Blu Homes' management that she would not compete with the company in the preconfigured green home

business.  (Am. Compl. ¶ 21; McCarthy Decl. ¶ 17).   Negotiations continued between the parties through August 2009.  (McCarthy Decl. ¶ 11).

On August 21, 2009, Blu Homes entered into a six-month consulting agreement with the Kaufmann Defendants ("Consulting Agreement").  (Am Compl. ¶¶ 22, 26, Ex. B).   The Consulting Agreement provided, among other things, that Kaufmann and a corporate entity controlled by her, co-defendant Michelle Kaufmann Studio, were contracting to provide services to Blu Homes in Massachusetts, that they would be paid each month for twenty hours of work each week, that Blu Homes would reimburse them for any travel expenses incurred in providing services to the company and that the underlying purpose of the agreement was to determine whether Kaufmann and Michelle Kaufmann Studio would join Blu Homes on a full-time basis.  (McCarthy Decl. ¶ 18).[3]  Once Blu Homes and Kaufmann signed the Consulting Agreement, Kaufmann began collaborating with Blu Homes' designers on virtually all the company's products and designs.  (McCarthy Decl. ¶¶ 20-24). Kaufmann and Blu Homes' designers exchanged hundreds of emails to accomplish their work together and Kaufmann sent her work product to them in Massachusetts.  (McCarthy Decl. ¶ 20).  Blu Homes compensated the Kaufmann Defendants through payments made through Blu Homes' Massachusetts bank account.  (McCarthy Decl. ¶ 25).

---

[3]The Consulting Agreement also provided that Blu Homes would own all of the subject matter created by the Kaufmann Defendants (Section 7), that the Kaufmann Defendants would not disclose, use or publish any confidential information without the express prior written consent of Blu Homes (Section 6.1), that the Kaufmann Defendants would not provide any architectural or related services to third parties regarding the design or construction of preconfigured prefabricated single-family homes with the exception of custom prefabricated homes and work on projects commenced prior to the date of the consulting agreement (Section 19) and that Kaufmann would not contact or otherwise solicit any customer or prospect with the intention or effect of encouraging that party to take away business from Blu Homes (Section 19). (Am. Compl. ¶¶ 23-25, Ex. B).

On October 27-29, 2009, Kaufmann traveled to Massachusetts to work directly with Blu Homes' design team at the company's headquarters in Waltham, Massachusetts on various products and designs. (McCarthy Decl. ¶ 22). During this visit as well as in telephone calls, Kaufmann received trade secrets and other confidential information regarding Blu Homes' folding steel framing system and other methods used in design, fabrication and installation processes. (Am. Compl. ¶ 27; McCarthy Decl. ¶ 23). Shortly thereafter, the business relationship between Blu Homes and Kaufmann deteriorated and Kaufmann launched new projects. (Pl. Opp. at 3; McCarthy Decl. ¶ 28).

## IV. Procedural History

Blu Homes filed its complaint on August 17, 2010. (D. 1). It subsequently filed a first amended complaint on November 5, 2010, alleging copyright infringement (Count I), false advertising and unfair competition under 15 U.S.C. § 1125(a) (Count IV) and unfair and deceptive trade practices under Mass. Gen. L. c. 93A (Count V) against all Defendants; trademark infringement under 15 U.S.C. § 1114(1)(a) (Count II), trademark infringement and unfair competition under 15 U.S.C. §1125(a) (Count III), breach of contract (Count VI), misappropriation of trade secrets and confidential information (Count VIII), fraudulent misrepresentation (Count IX) and negligent misrepresentation (Count X) against all Defendants except Studio 101 Designs, Inc.; and tortious interference with contract (Count VII) against Studio 101 Designs, Inc. (D. 6). Blu Homes settled its claims with Studio 101 Designs, Inc. and that defendant was dismissed from this case on February 4, 2011. (D. 25).

The Kaufmann Defendants have now moved to dismiss or transfer. (D. 18). Blu Homes moved for leave to file a second amended complaint. (D. 26). The Kaufmann Defendants have also

moved to strike portions of the McCarthy Declaration filed by Blu Homes in support of its opposition to the Kaufmann Defendants' motion to dismiss or transfer. (D. 36). The Court heard oral argument on July 20, 2011. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1367(a).

## V. Discussion

### A. The Kaufmann Defendants' Motion To Dismiss or Transfer

#### 1. Personal Jurisdiction

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (quoting Sawtelle, 70 F.3d at 1387) (further citation omitted). Accordingly, this Court may only exercise personal jurisdiction within the limits set by Massachusetts' long-arm statute and the Constitution. Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997). Because courts are to construe "the Massachusetts long-arm statute as being coextensive with the limits permitted by the Constitution," this Court may "turn directly to the constitutional test for determining specific jurisdiction." Adelson v. Hananel, __ F.3d __, 2011 WL 2698330, at *2 (1st Cir. July 13, 2011). Although a court may exercise two types of personal jurisdiction: general and specific, Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010), Blu Homes does not contend that the Court has general jurisdiction over the Kaufmann Defendants (Tr. 7/20/11 at 2) and, therefore, the Court need only address whether Blu Homes has asserted sufficient facts to support the exercise of specific jurisdiction over the Kaufmann Defendants.

##### a. Specific Jurisdiction Analysis

"The First Circuit employs a tripartite analysis to determine whether specific jurisdiction is appropriate: 1) whether the claims arise out of or are related to the defendant's in-state activities; 2) whether the defendant has purposefully availed itself of the laws of the forum state and 3) whether the exercise of jurisdiction is reasonable under the circumstances." Pesmel N. Am., LLC v. Caraustar Indus., Inc., 754 F. Supp. 2d 168, 172 (D. Mass. 2010) (citing cases).

### i. Relatedness

Relatedness focuses on whether "'the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities.'" Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009) (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)) (further citation omitted). Here, the claims raised by Blu Homes directly arise and relate to the Kaufmann Defendants' contacts with Massachusetts. Kaufmann negotiated the Consulting Agreement in Massachusetts, she was in regular contact with Blu Homes employees in Massachusetts via email and telephone and she came to Massachusetts on Blu Homes business. In negotiating the Consulting Agreement, Kaufmann came to Massachusetts to meet with Blu Homes' management team and made allegedly false statements upon which Blu Homes relied when it entered into the Consulting Agreement with Kaufmann.[4] In addition, in performing the services for

_____

[4]The Kaufmann Defendants' argument that "the alleged conversation in Cape Cod . . . is not actionable, and thus no cause of action [including the misrepresentation claim] has arisen from that conduct" does not defeat Blu Homes' argument that their contacts were sufficiently related to the forum for the purposes of establishing specific jurisdiction over them. (Def. Memo at 14). To assess whether the Kaufmann Defendants' conduct was sufficiently related to the forum state, the Court must assess whether the alleged claims in fact arise out of its in-forum activities. "The First Circuit has adopted a relatedness standard that is somewhere between a 'proximate cause' and a 'but-for' standard." Barry v. Rollarama Skating Ctr., Inc., No. 07-40266, 2008 WL 2074149, at *4 (D. Mass. May 7, 2008) (quoting Nowak v. Tak How Inv., Ltd., 94 F.3d 708, 715 (1st Cir. 1996)). Here, as alleged in the first amended complaint, the claims for fraudulent misrepresentation, breach of contract and the other claims asserted against the

which she was hired under the Consulting Agreement, Kaufmann was in regular contact with Blu Homes' design team and traveled to Massachusetts on at least one occasion to discuss products she had either originally designed or to which she had substantially contributed with them. During this same visit, she allegedly received Blu Homes' trade secrets and confidential information. The alleged misappropriation of trade secrets and copyright and trademark infringement claims also concerns a web site that is available to Massachusetts residents and allegedly is causing tortious injury to Blu Homes in Massachusetts. See, e.g., Berklee College of Music, Inc. v Music Indus. Educators, Inc., 733 F. Supp. 2d 204, 209-10 (D. Mass. 2010) (concluding that "it is well established that the relatedness prong is satisfied when, as is asserted here, the alleged [trademark infringement] arises out of the publication of a website continuously available to Massachusetts residents and causing tortious injury in Massachusetts [where the trademark owner is located]") (internal quotations and citations omitted). This is sufficient to satisfy relatedness.

### ii. Purposeful Availment

To show purposeful availment, there must be some act or series of acts "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe Co v. State of Washington, 326 U.S. 310, 319 (1945)). The purposeful availment test involves a consideration of both voluntariness and foreseeability. Burger King Corp.

---

Kaufmann Defendants would not have arisen but for Kaufmann's allegedly false representations and assurances made in Massachusetts about her intention not to compete with Blu Homes. Whether the Kaufmann Defendants may prevail on the merits of these and the other claims alleged by Blu Homes will be left for summary judgment or trial, but does not defeat the finding that their contacts were sufficiently related to Massachusetts for the purposes of the Court's jurisdictional analysis.

v. Rudzewicz, 471 U.S. 462, 474-75 (1985). The inquiry under this prong "focuses on the defendant's intentionality" and "is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623-24 (1st Cir. 2001) (citations omitted).

Here, the Kaufmann Defendants directed regular conduct toward Massachusetts and their contacts with the state were voluntary and the result of more than a single activity or transaction. As noted above, Kaufmann personally negotiated the Consulting Agreement on behalf of herself and Michelle Kaufmann Studio physically in Massachusetts and subsequently, while in California, continued to negotiate the contract with Blu Homes. As a consultant for Blu Homes, she came to Massachusetts to discuss products with the design team and received certain trade secrets and other confidential information during that visit. While in California, Kaufmann, as Blu Homes' consultant, participated in phone calls and exchanged hundreds of emails with the company's design team to collaborate on designs and products. The Kaufmann Defendants also advertise and promote their architectural designs and design services through websites visible to customers in Massachusetts. Taken together, these contacts are neither "fortuitous" nor "purely incidental" (Def. Memo at 20); rather, the Kaufmann Defendants knowingly availed themselves of the benefits of doing business in Massachusetts. Although it may be true that phone calls and posting information on a website, without more, are insufficient on their own to satisfy the minimum contacts standard, this was not, as discussed above, the Kaufmann Defendants' only forum-related conduct. The Kaufmann Defendants cannot take advantage of the commercial benefit of working with Blu Homes, a Massachusetts based company, enter into a consulting agreement to help the company build its

business whose primary economic impact will be felt in Massachusetts and then not reasonably expect to be haled into court in this state.

Indeed, the business activities of the Kaufmann Defendants here are similar to those the First Circuit recently found constituted purposeful availment in <u>Adelson</u>, where the Defendant, located in Israel, sought an employment contract with a company whose officers were located in Massachusetts and whose financial accounts were administered out of Massachusetts and was in regular contact with employees in Massachusetts. 2011 WL 2698330, *3-4. Here, as in <u>Adelson</u>, the Kaufmann Defendants' business activities for Blu Homes involved negotiations of the consulting agreement in Massachusetts, regular communication with Blu Homes' staff in Massachusetts in performance of their consulting agreement and travel to Massachusetts to meet with Blu Homes' employees to discuss products and designs. In light of these activities, it is reasonable to conclude that the Kaufmann Defendants could have foreseen being subject to the Court's jurisdiction.

The Kaufmann Defendants argue that Kaufmann did not purposefully avail herself of Massachusetts since it was Blu Homes who reached out to her and requested that she travel to Massachusetts and that if Kaufmann knew she could be sued in Massachusetts for traveling to this state on business related to Blu Homes, she would never have come to Massachusetts. (Def. Memo at 23, Def. Reply at 8; Second Kaufmann Aff. ¶ 19; Tr. 7/20/11 at 11). However, it matters less that Blu Homes asked Kaufmann to travel to Massachusetts to meet with its employees and more that Kaufmann negotiated a consulting agreement in Massachusetts for her benefit, that she worked twenty hours a week on business for Blu Homes as set forth in the consulting agreement and that her job as a consultant involved coming to Massachusetts on business for Blu Homes. In other words, the relationship with Blu Homes was commercially advantageous to the Kaufmann

Defendants just as it was for Blu Homes.  It is reasonable that an individual who negotiates a contract to start a business relationship with a company based in Massachusetts, maintains regular contact with employees at that company in performing services under the contract and travels to Massachusetts to perform those same services for the company, whose primary economic impact is here, would be subject to the jurisdiction of a court in Massachusetts when she is sued for breaching the very agreement giving rise to their relationship and for allegedly infringing on the company's intellectual property rights.[5]  Accordingly, the Kaufmann Defendants' contacts constitute purposeful availment.

### iii.    Reasonableness

Even if relatedness and purposeful availment have been shown, the Court must still determine whether the exercise of personal jurisdiction is reasonable in light of the so-called "gestalt" factors:  "(1) [the Kaufmann Defendants'] burden in appearing, (2) [Massachusetts'] interest in adjudicating the dispute, (3) [Blu Homes'] interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."  Adelson, 2011 WL 2698330, at *5 (citation omitted); Burger King, 471 U.S. at 477.  In considering and weighing these factors, the Court's exercise of personal jurisdiction over the Kaufmann Defendants is reasonable.

The first factor does not weigh against jurisdiction.  Here, the Kaufmann Defendants will be

_____

[5]The Kaufmann Defendants' argument that the services Kaufmann rendered were exclusively performed from her studio in California (Def. Memo at 22) also does not change our analysis.  As the First Circuit has explained, a defendant "need not be physically present in the forum state in order to have transacted business there" for the purposes of the Court's jurisdictional analysis.  Hannon v. Beard, 524 F.3d 275, 281 (1st Cir. 2008) (internal quotations and citation omitted).

required to litigate this case in a Massachusetts court despite the fact that they and their witnesses are located in California. Although the need to defend an action in a foreign jurisdiction "is almost always inconvenient and/or costly . . . this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3 d 53, 64 (1st Cir.1994). The Kaufmann Defendants argue that they will be unfairly burdened by the expense and inconvenience of additional time and resources lost in traveling to and from Massachusetts (Kaufmann Aff. ¶ 14), but fail to demonstrate a "special or unusual burden" about its situation other than the ordinary inconvenience of litigating an action in another state. See Adelson, 2011 WL 2698330, at 5 (concluding that the first factor did not weigh against jurisdiction because defendant had not shown a special or unusual burden in defending an action in Massachusetts "over and above that of doing so in any foreign jurisdiction"). The Kaufmann Defendants have also not demonstrated they have endured any additional burden, financial or otherwise, by the litigation being maintained in Massachusetts that they would not have had to face in California. As discussed *infra*, the Kaufmann Defendants' additional argument that they would not be able to compel their witnesses, located in California, to testify in Massachusetts (Def. Memo 23-24; Kaufmann Aff. ¶ 7), does not, without more, create a more unusual burden than faced by any other out-of-state Defendant.

The second factor, concerning Massachusetts' interest in adjudicating the dispute, weighs heavily in favor of keeping the lawsuit in this district. Blu Homes is based here in Massachusetts. Its headquarters is located in Waltham and its manufacturing plant is in East Longmeadow. At a minimum, it presumably has been harmed from the alleged tortious use of their copyright and trademark rights and the Kaufmann Defendants' breach of the Consulting Agreement and Massachusetts has an interest in seeing this harm addressed and remedied here.

The third gestalt factor, which relates to convenience of the venue to the plaintiff, plainly weighs in Blu Homes' favor. The First Circuit has "repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395. Here, clearly, it would be more convenient for Blu Homes to pursue this action in Massachusetts where its corporate headquarters and its witnesses and documents are located.

The judicial system's interest in the most effective resolution of the controversy "does not appear to cut in either direction." Ticketmaster, 26 F.3d at 211. However, because "it is unlikely that the parties will be able to resolve the dispute without judicial intervention in some forum" if the matter is dismissed here, "[t]he most efficient path for the judicial system . . . is to move forward with the lawsuit in the present forum." Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34, 46 (D. Mass. 1997).

The final factor – concerning the interests of each of the affected states (here, Massachusetts and California) – in promoting substantive social policies does not clearly favor one state or another, see Adelson, 2011 WL 2698330 at *6, since presumably both states have an interest in contract enforcement, prevention of fraud and federal copyright and trademark law. Even so, upon consideration and weighing of all these factors, the exercise of personal jurisdiction over the Kaufmann Defendants is reasonable.

### 2. Whether Venue is Proper

If a case is brought in a federal district court where venue is improper, that court must either dismiss the case, or, if in the interest of justice, transfer the case to a proper venue. 28 U.S.C. § 1406(a); See Fed. R. Civ. P. 12(b)(3). Even when a case is brought in a proper venue, a court may

nonetheless transfer the case to any other proper venue for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a).[6]  The Kaufmann Defendants ask this Court to either dismiss this case for improper venue or to transfer the case to the Northern District of California.  Venue is proper in this Court and the Court will not dismiss on this basis or transfer the case.

In an action not based solely on diversity, venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  In determining whether a given judicial district is a "district in which a substantial part of the events occurred," courts in the First Circuit look "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim," an approach which "takes a holistic view of the acts underlying a claim. " <u>Astro-Med</u>, 591 F.3d at 12 (quotations and citations omitted). "Furthermore, we are not required to determine the best venue, merely a proper venue."  <u>Id.</u>

In this case, venue is proper in this district.  Although the Kaufmann Defendants' alleged infringement of Blu Homes' intellectual property and breach of the consulting agreement arguably occurred in California, outside this judicial district, that infringement and breach was merely the "triggering event" prompting Blu Homes' complaint; the sequence of events includes Kaufmann negotiating the consulting agreement in Massachusetts, learning about the trade secrets and confidential information in Massachusetts and coming to Massachusetts to perform her consulting services.  One of the two parties to the consulting agreement central to this case is, and was at all

---

[6]Section § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

times relevant to this litigation, located in Massachusetts. Accordingly, Massachusetts is a proper venue.

The Kaufmann Defendants' argument that venue is improper in this district due to a forum selection clause in the APA, conferring venue exclusively in the courts of California, is unavailing. The APA contains a forum selection clause which states that "[t]he Superior Court of the State of California in and for the County of San Francisco and the United States District Court for the Northern District of California shall have exclusive jurisdiction over any litigation arising out of or related to this agreement. Any such litigation may be filed, brought, heard, tried or determined only in [that forum]." (Am. Compl., Ex. A (copy of APA) at Section 11.6). The Kaufmann Defendants assert that the APA's California forum selection clause should apply here because: i) the litigation arises out of or is related to the APA; and ii) they are third-party beneficiaries of the APA. Under California law, "[w]hen a party not specifically identified in an agreement claims third-party beneficiary status, it has the burden of proving that the contracting parties intended to benefit it." Hess v. Ford Motor Co., 27 Cal. 4th 516, 534-35 (2002) (citing cases).[7] That is, although a party claiming to be a third-party beneficiary need not be named in the contract, "[t]he contracting parties must have intended to confer a benefit on the third party." Hess, 27 Cal. 4th at 535 (citing cases). "Ascertaining th[e] intent [of the contracting parties] is a question of ordinary contract interpretation." Id. at 524 (citation omitted).

Here, however, the Kaufmann Defendants are not expressly named in the APA as a party or third-party beneficiary to the contract. (Pl. Opp. at 5; Def. Memo at 9). The Kaufmann Defendants

---

[7]The parties agree that California law governs the interpretation of the APA including whether the parties to the agreement intended Kaufmann and Michelle Kaufmann Studio to be third-party beneficiaries under the APA. (Tr. 7/20/11 at 5; Def. Memo at 6; Pl. Opp. at 4).

have also not shown that Blu Homes and Uecker intended to benefit them as third-party beneficiaries at the time they entered into the APA. The APA unambiguously states that Uecker entered into the agreement "as the assignee for the benefit of the creditors of mkElements, Inc." (Am. Compl., Ex. A (APA at 1)). The APA does not reference the Kauffman Defendants or any other entity and relates solely to the disposition of the assets of mkElements, a corporate entity Kaufmann created to shield herself from personal liability.[8] Kaufmann had assigned the assets of mkElements to Uecker so that Uecker could liquidate those assets to satisfy mkElements' obligations to its creditors. (Kaufmann Aff. ¶ 8; Def. Memo. at 9). Although the Kaufmann Defendants rely on Kaufmann's affidavit to show her reasons for assigning the assets to Uecker, it is the intentions of Uecker and Blu, the actual parties to the contract, that control. See Garcia v. Truck Ins. Exchange, 36 Cal. 3d 426, 436 (1984) (noting that "[a] putative third party's rights under a contract are predicated upon the contracting parties' intent to benefit" it). Moreover, since Defendant Michelle Kaufmann Studio did not even exist at the time Blu and Uecker entered into the APA, it cannot be said that the APA was intended to benefit that entity at that time. The language of the APA is simply not reasonably susceptible to the interpretation placed upon it by the Kaufmann Defendants. Because the Kaufmann Defendants have not met their burden of proving that the parties to the APA intended to benefit them, they may not enforce the APA's forum selection clause.

Even assuming the Kaufmann Defendants were third party beneficiaries of the APA, the APA does not apply to the instant dispute since it does not arise out of or relate to the APA. Section 11.6 of the APA provides that certain California courts "shall have exclusive jurisdiction over any litigation arising out of or related to this agreement." (Am. Compl., Ex. A (APA at 10)). Although

---

[8]The amended complaint also alleges that the APA was created solely to benefit mkElements' creditors. (Am. Compl. ¶ 13).

the APA was attached to the first amended complaint as an exhibit, the first amended complaint does not allege any breach of the APA nor does it put at issue Blu Homes' ownership of the assets it acquired under the APA. Rather, the first amended complaint demonstrates that Blu Homes' claims primarily arise out of the Consulting Agreement,[9] namely Blu Homes' claims for breach of the Consulting Agreement (Am. Compl. ¶¶ 78-81), misappropriation of trade secrets and confidential information (Am. Compl. ¶¶ 87-92), fraudulent misrepresentation (Am. Compl. ¶¶ 93-97) and intellectual property rights that are delineated by federal and common law. (Pl. Opp. at 8; Tr. 7/20/11 at 20). Moreover, Kaufmann acknowledged in the Consulting Agreement Blu Homes' ownership in the assets it acquired under the APA and agreed that the Consulting Agreement superceded and replaced any prior agreements between the parties related to the same subject matter. (Am. Compl., Ex. B (Consulting Agreement) at sections 7, 16). Thus, the fact that Blu Homes and Uecker selected California as their forum of choice in the APA has no bearing on the present dispute between the Kaufmann Defendants and Blu Homes. Accordingly, venue is proper in this district.

### 3. Whether, in the Alternative, the Court Should Transfer This Action Under 28 U.S.C. § 1404(a)

The decision to transfer a case pursuant to § 1404(a) is a matter within the discretion of the district court. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Codex Corp. v. Milgo Elec. Corp, 553 F.2d 735, 737 (1st Cir. 1977). When considering whether to grant a motion pursuant to 28 U.S.C. § 1404(a) to transfer from a proper venue, courts consider "(1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) cost of obtaining willing

_____

[9]The Consulting Agreement does not contain a forum selection clause, but is governed by Delaware law. (Am. Compl., Ex. B (Consulting Agreement at section 12); Pl. Opp. at 8).

witnesses, and (6) any practical problems associated with trying the case most expeditiously and inexpensively." See F.A.I. Elec. Corp. v. Chambers, 944 F. Supp. 77, 80-81 (D. Mass. 1996) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). "Of those factors, the convenience to the expected witnesses is probably the most important factor, and the factor most frequently mentioned." Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l., Inc., 56 F. Supp. 2d 134, 141 (D. Mass. 1999) (quotations and citations omitted).

The Court must also keep in mind that "there is a 'strong presumption in favor of the plaintiff's choice of forum.'" Astro-Med, Inc., 591 F.3d at 12 (quoting Coady v. Aschraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000)). "The plaintiff's forum choice should rarely be disturbed . . . thus, the moving defendant . . . must establish that the private and public interests weigh heavily on the side of trial in the foreign forum." Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 424 (1st Cir. 1991) (internal quotations and citations omitted). "Because there is a presumption in favor of plaintiff's choice, transfer is not appropriate where its effect is merely to shift the inconvenience from one party to the other." Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 125 (D. Mass. 2000) (citation omitted).

As discussed *supra*, the convenience of the parties weighs in favor of the exercise of personal jurisdiction over the Kaufmann Defendants and does not warrant transfer of venue for the same reasons.[10] The Court also anticipates that it will not be difficult for the parties and this Court to

---

[10]To the extent the Kaufmann Defendants argue that California would not be inconvenient for Blu Homes because it maintains a corporate office in San Francisco (Def. Memo at 23), their argument does not carry the day. Blu Homes opened its San Francisco office only a few months ago and had no employees there prior to the commencement of this lawsuit. See McCarthy Decl. at ¶ 30. None of Blu Homes' potential witnesses work in its San Francisco office or are located within California. (Pl. Opp at 30 & n.5). In addition, the Kaufmann Defendants' argument that because Blu Homes agreed to be subjected to the jurisdiction of California in the forum selection clause contained in the APA is of no help. As discussed *supra*,

access all proof necessary for this matter. The Kaufmann Defendants contend that evidence is more readily available in California because it is located there. While the location of records and documents relevant to the litigation is a factor that the court should consider, it is not a particularly important factor because of the ease with which that information can be transported to another jurisdiction. See 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3853 ("[S]ince most records and documents now can be transported easily or exist in miniaturized or electronic form . . . their location is entitled to little weight. This is particularly true with the development of photo duplication, facsimile transmission, the Internet, and the easy availability, excellent reproducibility, and relatively low cost of hard and electronic copies.").

Further, the Court finds that the convenience of witnesses does not compel a different outcome. The Kaufmann Defendants argue that all of their witnesses reside in California and that it would be inconvenient to require them to travel such great lengths to Massachusetts to testify. Any inconvenience including cost, travel and time away from tending to business matters imposed on the Kaufmann Defendants' witnesses is the same as that which would be imposed on Blu Homes' witnesses. The strong "presumption in favor of a plaintiff's choice of forum renders transfer inappropriate where its effect is merely to shift the inconvenience from one party to the other." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 71 (D. Mass. 2001); Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 18 (D. Mass. 2002). The Kaufmann Defendants also contend that the parties will be unable to compel the attendance of unwilling witnesses located in California. While it may be true that the Kaufmann Defendants' unwilling

---

Blu Homes and Uecker entered into the APA so that Blu Homes could acquire the intellectual property of mkElements. The ownership of that intellectual property is not at issue in this case. Thus, the APA's forum selection clause is not relevant to the instant case.

witnesses may not be compelled to appear in Massachusetts, see Fed. R. Civ. P. 45(b)(2), whereas

Blu Homes may require its witnesses to travel to California because they are employees of the

company, the Kaufmann Defendants have not shown that any of their potential witnesses are in fact

unwilling or unable to appear in Massachusetts. See Sivert v. Harsco Corp., No. 09-10707, 2009

WL 3300031, at *4 (D. Mass. July 7, 2009) (noting that defendants had not shown that witnesses

no longer employed by defendant "would be unwilling or unable to appear in Massachusetts").

Having weighed the various factors, the Court is not convinced that the balance of conveniences and

fairness outweighs the strong presumption in favor of plaintiff's choice of venue. For all these

reasons, the Court opts not to transfer the case.[11]

### B.     Blu Homes' Motion for Leave to File a Second Amended Complaint

Blu Homes seeks leave to amend its complaint to insert the term "intentional" in the

complaint to reflect the fact that the Kaufmann Defendants' acts were intentional and knowing, not

negligent or inadvertent, and to eliminate claims against Studio 101 Designs, Inc., a defendant that

was previously dismissed  from this case, see D. 25, and against Michelle Kaufmann Studios, Inc.,

an entity which, as discussed above, does not exist.[12]  Pursuant to Fed. R. Civ. P. 15(a)(2), the Court

"should freely give leave [to amend] when justice so requires."  Amendments should be liberally

---

[11]Since "[s]ection 1404(a) is a codification of the doctrine of forum non conveniens," Albion v. YMCA Camp Letts, 171 F.3d 1, 2 (1st Cir. 1999), dismissal is also not warranted under *forum non conveniens* for the reasons noted above.  While it may be more inconvenient for the Kaufmann Defendants to litigate in Massachusetts, this is not the type of "oppressiveness and vexation" disproportionate to Blu Homes' convenience of litigating in this district.  Nowak, 94 F.3d at 720 (citation omitted).

[12]The Kaufmann Defendants do not object to the removal of Studio 101 Designs, Inc. or Michelle Kaufmann Studios, Inc. from this case, but object to amending the pleadings on the grounds that it is unnecessary to effectuate the dismissal of these parties.  (Def. Opp. to Pl. Mot. to Amend at 5).

permitted in the absence of undue delay, bad faith or dilatory motive, futility, or undue prejudice to the opposing party. Foman v. Davis, 371 U.S. 178, 182 (1962); United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009).

Here, there is no undue delay or undue prejudice to the Kaufmann Defendants in granting leave to amend. Blu Homes is seeking leave to amend in the early stages of this litigation; no discovery schedule or trial date has yet been set. The second amended complaint does not expand the avenues of recovery and the Kaufmann Defendants will have ample time to prepare for and conduct discovery in light of the second amended complaint and defend themselves in this litigation. Compare Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 71-72 (1st Cir. 2001) (affirming denial of leave to amend because undue prejudice existed where plaintiff's attempted amendment "very late in the proceedings" meant that defendant "had a limited ability to adapt its defense" to encompass unexpected claims); Acosta-Mestre v. Hilton Int'l. of Puerto Rico, Inc., 156 F.3d 49, 52 (1st Cir. 1998) (affirming denial of leave to amend sought a year after the first amended complaint was filed, where granting leave would have resulted in "a re-opening of discovery with additional costs, a significant postponement of trial, and a likely major alteration in trial strategy and tactics").

In their filings, the Kaufmann Defendants argue that allowing Blu Homes to describe the their acts in the complaint as intentional would amount to undue prejudice under Rule 15(a)(2) because intentional acts would not be covered under Kaufmann's insurance policy (which has not been produced to the Court) and would severely limit Kaufmann's ability to litigate this case. However, at oral argument, counsel for the Kaufmann Defendants informed the Court that even after receiving the proposed second amended complaint replete with the term "intentional," Kaufmann's

insurer informed her that she was covered under the policy. (Tr. 7/20/11 at 33-34). Thus, the Kaufmann Defendants' contention that Blu Homes seeks to divest Kaufmann of insurance coverage by claiming her acts were intentional and place her at a severe financial disadvantage in this litigation is moot. Since, as discussed above, the Kaufmann Defendants will not be prejudiced by the timing or nature of the second amended complaint and given that they have not argued any other compelling basis for denying Blu Homes' motion for leave to amend its complaint, this Court finds no reason to deny Blu Homes' motion under the liberal standard of Rule 15(a)(2). Accordingly, Blu Homes' motion for leave to amend is GRANTED.

### C.    The Kaufmann Defendants' Motion to Strike Certain Paragraphs of the McCarthy Declaration

The Kaufmann Defendants move to strike paragraph 17 and any other portions of the McCarthy Declaration that they claim constitute impermissible parol evidence because it varies or contradicts the terms of the Consulting Agreement. The Court finds no reasons for striking any portions of the McCarthy Declaration. When determining whether a defendant has established sufficient minimum contacts with the forum in a case involving a contract between the parties, "[t]he Court is to look to all of the communications and transactions between the parties, before, during and after the consummation of the contract, to determine the degree and types of contacts the defendant has with the forum, apart from the contract alone." Ganis, 822 F.2d at 197-98; Burger King, 471 U.S. at 479 (noting that "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum"). Here, the Court has considered the declaration for the purposes of determining whether the Kaufmann Defendants have established minimum contacts with Massachusetts, not for deciding the

merits of Blu Homes' contract claims which are not before the Court at this time.

**VI.     Conclusion**

For the foregoing reasons, the Kaufmann Defendants' motion to dismiss or transfer is

DENIED and the Kaufmann Defendants' motion to strike is DENIED.   Blu Homes' motion for

leave to file a second amended complaint is GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge